HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
BRIANNA FULLER MIRCHEFF (Bar No. 243641)
(E-Mail: Brianna_Mircheff@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4784
Facsimile: (213) 894-0081

Attorneys for Movants

FILED
CLERK, U.S. DISTRICT COURT

DEC 23 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

In re:

Victor Manuel Ramos-Castaneda

Josue Rafael Sorto-Orellana

Rudy Leonel Murcia

Jose Pelayo Michel

Clemente Monroy

Santiago Arteaga-Rosas

Luis Fernando Sanchez

Miguel Rodriguez-Luna

Case No. CV CV15-9875 R EX

Related to CV 10-2211-DMG[1]

**EX PARTE APPLICATION FOR APPOINTMENT OF COUNSEL; EXHIBIT**

        The above-named individuals hereby apply to this Court for an Order appointing the Office of the Federal Public Defender to represent them.

//

//

//

---

[1] A notice of related case is being concurrently filed with this application.

This application is based upon the attached declaration of counsel and any further information presented to the Court in connection with this application.

Respectfully submitted,

DATED: December 23, 2015          By

HILARY POTASHNER
Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Criminal Justice Act plan for the Central District of California states that, when a district judge or magistrate judge concludes that representation is required under the CJA, counsel "shall be provided." General Order 13-09 (September 17, 2013).

This Court in *Franco-Gonzalez v. Holder* found that certain individuals with serious mental disabilities in immigration proceedings were entitled to the appointment of a qualified representative. The VERA Institute of Justice, acting on behalf of the *Franco* Defendants to implement the Court's order and the settlement in that case, entered a contract with the Federal Public Defender's Office in the Central District of California to assist in meeting the need for qualified representatives to represent class members in the greater Los Angeles area. The eight individuals named above were found incompetent by an Immigration Judge sitting in Adelanto, California, and were assigned to the Federal Public Defender's Office for representation under the contract. The Federal Public Defender's Office now seeks an order finding that such representation is authorized under the Criminal Justice Act.

The Criminal Justice Act makes mandatory the appointment of counsel in a case where a financially eligible person "faces loss of liberty in a case and Federal law requires appointment of counsel." 18 U.S.C. § 3006A(i). This is such a case. The Federal Public Defender's Office respectfully requests that the Court grant the motion for appointment of counsel on behalf of these individuals.

### II. FACTUAL BACKGROUND

In *Franco-Gonzalez v. Holder*, this Court certified a class of individuals in California, Arizona, and Washington who have a "serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal

proceedings." Order re: Plaintiff's Motion for Class Certification, *Franco-Gonzalez v. Holder*, Dkt. # 348, CV 10-2211 DMG (DTB) (Nov. 21, 2011).[2] The Court defined a subclass of all such individuals who are in fact incompetent to represent themselves, known as Subclass One. The Court then granted a motion for summary judgment as to Subclass One members' claims that they were entitled to the appointment of a qualified representative under the Rehabilitation Act. Order re: Plaintiff's Motion for Partial Summary Judgment, Dkt. # 592 (Apr. 23, 2013).

In the course of the *Franco* litigation, the question of appointment of counsel under the CJA came up twice. First, in the course of granting a motion for preliminary injunction, the Court stated:

> Plaintiffs urge the Court to appoint an attorney pursuant to 18 U.S.C. §§ 3006A(a)(1)(D), (I) of the Criminal Justice Act ("CJA"). Plaintiffs cite authority for their position that the CJA has been applied in civil proceedings and that courts recognize that deportation involves the "loss of liberty." Defendants, on the other hand, point to section 210.20.50(d) of the "Guidelines for Administering the CJA and Related Statutes," volume 7, Part A of the Administrative Office of the United States Courts' Guide to Judiciary Policy ("Guide to Judiciary Policy"), which provides:
>
> > Cases or proceedings which are not covered by or compensable under the CJA include the following. . . . Administrative proceedings before the U.S. Citizenship and Immigration Services (USCIS), removal or deportation proceedings before the Immigration Court, review of the Immigration Court's decision by the Board of Immigration Appeals, and judicial review by the federal courts of appeals of petitions for review from these administrative decisions. **But** see: § 210.20.30 (ancillary matters) and § 210.20.20(a)(2) (habeas corpus cases).

---

[2] All further references to Docket Numbers refer to case CV 10-2211-DMG (DTB).

Guide to Judiciary Policy, § 210.20.50(d) (available at http://www.uscourts.gov/
FederalCourts/AppointmentOfCounsel/CJAGuidelinesF orms/vol7PartNvol
7PartAChapter2.aspx#2 1 0_20)(emphasis in original); *cf Chamblin v. I.N S.*, 176
F. Supp. 2d 99 (D.N.H. 2000) (appointing counsel under the CJA to represent
INS detainees on habeas petitions under 28 U.S.C. § 2241), *Saldina v.
Thornburgh*, 775 F. Supp. 507 (D.Conn. 1991) (appointing counsel under the
CJA for pro se habeas petitioners because the interests of justice so required).

     The Court is not persuaded that it has authority under the CJA to appoint
counsel to represent Plaintiffs in their administrative proceedings before the
Immigration Court. As far as the Court is aware, CJA Panel Attorneys, at least in
the Central District of California, are screened and selected based upon their
qualifications to serve as criminal defense attorneys. Appointing a criminal
defense attorney to represent Plaintiffs in a case that revolves around reasonable
accommodations for mentally incompetent aliens in removal proceedings would
not appear to be a reasonable use of CJA funds or an appropriate accommodation
for Plaintiffs.

Amended Order re: Plaintiffs' Motion for a Preliminary Injunction, Dkt. # 107, at 38-
39, n.20 (Dec. 27, 2010).

     On June 13, 2011, in connection with a further motion for preliminary injunction,
former Federal Public Defender Sean Kennedy offered a declaration stating that the
Federal Public Defender's Office was willing to accept appointment of counsel on
behalf of detained individuals with serious mental disabilities in immigration court and
believed such representation was authorized under the Criminal Justice Act. Dkt. # 217-
2, at 19-20 (June 13, 2011).

     On April 23, 2013, when this Court issued its order granting partial summary
judgment to the Plaintiffs, it referenced Mr. Kennedy's declaration:

1   The Court need not prescribe the exact source from which Defendants should
2   provide Qualified Representatives nor how they must do so. EOIR represents
3   that "[t]here is currently no mechanism in place to locate and retain appointed
4   counsel for all mentally incompetent detained aliens throughout the class action
5   states, and no 'public defender'-like body currently in existence from which
6   appointed counsel for removal proceedings can be drawn." (Lang Decl. ¶ 11
7   [Doc. # 441-2].) Plaintiffs, however, present a declaration from Sean K.
8   Kennedy, the Federal Public Defender for the Central District of California,
9   wherein Kennedy states that "[a]fter consulting with officials from the
10  Administrative Office of the United States Courts and independently researching
11  the issues, the FPDO has determined that the CJA would authorize their
12  appointment in this case and is prepared to accept such an appointment to
13  represent detained mentally disabled persons facing removal proceedings in the
14  Central District of California." (Decl. of Sean K. Kennedy ¶ 2 [Doc. # 217-2].)
15  Without deciding the issue, the Court has expressed reservations about its
16  authority to appoint counsel under the CJA in light of the nature and purpose of
17  the CJA. [Doc. # 107 at 38-39 n.20.] *Nonetheless, Kennedy's statement provides*
18  *one among many potential options that Defendants may explore in implementing*
19  *the Court's order.*

20  Dkt. # 592, at 11 (Apr. 23, 2013) (emphasis added).

21      Both before and after the Court issued its order on summary judgment,
22  individuals from the Executive Office of Immigration Review did in fact decide to
23  explore whether the Federal Public Defender's Office would consider submitting a bid
24  for a contract to represent individuals in their newly formed "National Qualified
25  Representative Project." Based on those conversations, the Federal Public Defender's
26  Office decided to do so.

27      To submit an application, FPDO was required to explain the organization's
28  "qualifications for providing representation to detained individuals who are determined

6

1   to be mentally incompetent." We described how our experience advocating for release

2   in detention hearings, arguing about the scope of terms like "aggravated felony" and

3   "crimes of violence" in the sentencing context, and about the "plausibility of

4   immigration relief" in 1326(d) cases made us uniquely situated to adapt to the practice

5   of representing individuals in removal proceedings. We argued that those skills, plus

6   our broad experience representing mentally ill clients, working with mental health

7   experts, and finding community placements for mentally ill clients, made us well-suited

8   to the work required for a NQRP contract.

9       VERA, in consultation with EOIR, selected the Federal Public Defender's Office

10  as a contractor for the National Qualified Representatives Project. The FPDO entered

11  into a contract with VERA on August 18, 2014, which was renewed on October 8,

12  2014. VERA assigned the FPDO eight cases in the fall of 2014. As of today's date, four

13  individuals were released from custody on conditions, were placed on the non-detained

14  docket and are awaiting hearings; one individual was granted cancellation of removal

15  and was therefore permitted to retain his legal permanent resident status; one individual

16  was granted withholding of removal and has an appeal pending regarding other forms

17  of relief; and two remain in custody with upcoming merits hearings dates.

18      Since that initial appointment, however, questions have been raised as to the

19  source of authority for the FPDO's representation. *See* 18 U.S.C. § 3006A(b)

20  (contemplating that a district court or magistrate judge will enter an order of

21  appointment for cases covered by the CJA). For this reason, the FPDO now seeks an

22  order establishing that its representation of the above-named individuals is authorized

23  under the CJA.

## III. ANALYSIS

25      The CJA authorizes appointment of counsel for "any financially eligible person

26  who . . . faces loss of liberty in a case and Federal law requires appointment of

27  counsel." 18 U.S.C. §3006A(a)(1) (I). Under this catch-all provision, this Court must

28  find three things: (1) that the individuals are financially eligible; (2) that the individuals

face a loss of liberty in their case; and (3) that Federal law requires appointment of counsel. Each of these requirements will be taken in turn.

The Court must first satisfy itself as to financial eligibility: The Criminal Justice Act requires that the Court find that a person is "financially eligible" for the appointment of counsel. Because these eight individuals have been deemed legally incompetent by a judicial officer, the FPDO does not believe it is appropriate to ask them to sign a financial affidavit under penalty of perjury. This Court should nonetheless find that the individuals are financially eligible. *See United States v. Lexin*, 434 F. Supp. 2d 836, 843-44 (S.D. Cal. 2006) (noting that the Criminal Justice Act does not require the filling out of a particular form, but solely that the Court to be satisfied as to indigency). As a general matter, it should not be a stretch to believe that individuals who are legally incompetent non-citizens and subject to immigration detention are, as a group, particularly unlikely to be able to pay the cost of their representation. Moreover, the declaration under seal contains basic biographical information about these eight individuals, sufficient for the Court to make an individualized determination regarding their eligibility for appointed counsel. *See* Declaration of Brianna Mircheff, ¶ 4. Finally, the FPDO remains under the ongoing obligation to notify the Court should they uncover a source of funding during the course of representation. Guideline to Judiciary Policy, Ch. 7, § 210.10.30.

The Court must next decide that these individual "face[] loss of liberty in a case." The Supreme Court has described deportation proceedings as a proceeding in which the "liberty of an individual is at stake." *Bridges v. Wilson*, 326 U.S. 135, 154 (1945). In *Bridges*, the Court considered whether a long-time resident of the United States would be banished to Australia as a person connected with the Communist party. *Id.* at 140-41, 154-55. The Court recognized:

> Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious

1    one—cannot be doubted. Meticulous care must be exercised lest the procedure
2    by which he is deprived of that liberty not meet the essential standards of
3    fairness.

4    *Id.* at 154. The individuals named above are facing the very real chance of this same

5    deprivation of liberty in their proceedings, if not a worse deprivation. *See* Declaration

6    of Brianna Mircheff, ¶ 4(g) (discussing order of the immigration judge as to one of the

7    named movants, finding that the individual would more likely than not be persecuted if

8    he were deported to Mexico, based on Mexico's treatment of the mentally ill).

9    Moreover, the class is defined as individuals "who are or will be in DHS custody

10   for removal proceedings." Dkt. # 592, at 3. Administrative detention is a "loss of

11   liberty." *Saldina v. Thornburgh*, 775 F. Supp. 507, 511 (D. Conn. 1991) (finding

12   "utterly specious" the argument that those detained by immigration authorities are not

13   facing a loss of liberty). *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (holding in

14   context of immigration detention that "[f]reedom from imprisonment—from

15   government custody, detention, or other forms of physical restraint—lies at the heart of

16   the liberty that Clause protects."); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535

17   F.3d 942, 950 (2008) (immigration detention involves "the individual's constitutionally

18   protected interest in avoiding physical restraint") (citing *Zadvydas*). All of the

19   individuals named in this *ex parte* were initially detained by DHS and were subject to

20   that loss of liberty.

21   The four individuals listed above who were released on bond continue to face a

22   loss of liberty. All four remain at risk of deportation, which unquestionably constitutes

23   a deprivation of liberty under *Bridges, supra* and numerous other cases. In addition, all

24   of them were released subject to conditions, which means that they can be redetained if

25   they violate those conditions. In an analogous context, the Supreme Court has held that

26   individuals who are released from criminal custody on parole or supervision are

27   considered "in custody," so long as their release is not unconditional. *Maleng v. Cook*,

28

490 U.S. 488, 490 (1989). So too here, individuals who must abide by conditions of release continue to face a loss of liberty so long as those conditions are in place.

The legislative history of the Criminal Justice Act makes clear that "loss of liberty" is not limited to placement in custody by criminal authorities. The House Report on the expansion of the 1970 expansion of the CJA cites *In re Gault*, 387 U.S. 1 (1967), a case about counsel for juveniles confined in a state industrial school. *See* Exhibit A (H.R. Rep. 91-1546). *Gault*, it said, meant that "the distinction between civil and criminal matters, however, has become increasingly obscure where deprivation of personal liberty is involved." *Id.*; *see also Saldina*, 775 F. Supp. at 511 (*Gault* "recognized the need to assist individuals facing a loss of liberty even where the loss was not necessarily the result of a criminal proceeding.").

The final question is whether Federal law requires the appointment of counsel. This Court has held that *Franco* class members are entitled to the appointment of a qualified representative to represent them in immigration proceedings. Dkt. # 592, at 6. The source of that right is the Rehabilitation Act, that is, a federal law. *Id.* The above eight individuals are class members who have been found incompetent by an immigration judge. *See* Declaration of Brianna Mircheff, ¶ 3. Thus, for purposes of the CJA, federal law requires appointment of counsel for these eight individuals.

Indeed, section (I) was added to the Criminal Justice Act to address the very situation presented here. After adding a number of specific situations in which appointment was appropriate -- juveniles, arrestees, materials witnesses, etc. -- the Report recommended a catch-all for anyone facing a loss of liberty who required the appointment of counsel:

> This provision obviates the need to amend the act each time the right to counsel may be extended to new situations. . . .The committee believes that it is unnecessary to create another separate system when the Criminal Justice Act can serve these purposes without difficulty.

H.R. Rep. 91-1546, at 3955. *Jett v. Castaneda*, 578 F.2d 842, 844 (9th Cir. 1978) (citing legislative history to hold that "the intent of Congress was clearly broader than merely to implement the Sixth Amendment right to counsel."). Thus both the plain language and the legislative history suggest that appointment would be appropriate in this case.

A question was raised earlier in the litigation about whether the Guide to Judiciary Policy precludes such appointments. It does not. Section 210.20.50(d) of the Guide contains a general statement that "removal or deportation proceedings before the Immigration Court" are not covered under the CJA. That may be a correct statement of a general rule: Federal law does not require appointment of counsel for every individual who appears in removal proceedings, and thus the appointment of counsel for all individuals in immigration court is not covered under the CJA. However, the Guide does not purport to cover this narrower situation, where appointment of counsel is required under the Rehabilitation Act for individuals with serious mental disorders, and thereby coverage under the CJA is authorized under subsection (I).

Nor is appointment of counsel here the exception that begins to swallow the rule set out in the Guide to Judiciary Policy: First, appointment under Section (I) is tethered to a finding by a federal court that appointment is required by federal law for a particular person or class of persons. Second, because the CJA contemplates an order of appointment by a federal district or magistrate judge, the Court remains the gatekeeper of such appointments in immigration court. Because representation in these cases is authorized under Section (I) and does not run afoul of the Guide for Judiciary Policy, this Court should issue an order of appointment for the Federal Public Defender's Office to represent the eight individuals listed above.

The Court, in its order, did not explicitly pass on this legal analysis, but instead noted some concern about whether appointing the FPDO was an appropriate use of CJA funds or a reasonable accommodation for the Plaintiffs. Neither of these should keep the Court from appointing the FPDO in the above cases. As to the first, the

11

1    appropriate use of CJA funds is to appoint counsel to the ends approved of in the CJA.
2    As described above, the CJA contemplates the appointment of counsel to individuals
3    who have a right to counsel under federal law. The FPDO is not seeking an order
4    appointing it in all of the cases in which a finding of incompetency is made, but rather,
5    in that limited subset of cases where the FPDO has been asked to serve as one of the
6    several providers called upon to meet the significant need for qualified counsel to
7    represent mentally ill individuals in immigration proceedings.

8          As to the question of whether appointment by the FPDO is an appropriate
9    accommodation, there are three points that should put the Court's concern at ease. One,
10   the authority for offering contracts lies not solely with EOIR, but with VERA, an
11   independent organization. Two, counsel for the *Franco* class continue to believe that
12   the FPDO are highly qualified to fill this role. See Declaration of Brianna Mircheff, ¶ 5.
13   The fact that VERA, EOIR, and Plaintiff's counsel all agree that the FPDO is an
14   appropriate contractor should satisfy the Court that appointment of the FPDO is not an
15   attempt to sandbag the class members' cases, but rather to ensure that they receive high
16   quality representation.

17         Lastly, the FPDO's attorneys are more qualified for this work than might be
18   apparent at first glance. An immigration case has three basic issues: detention,
19   deportability, and relief. On the first question, while the standard for detention in
20   immigration cases is different from criminal cases, the legal questions involved –
21   ensuring the safety of the community and the presence of the respondent at future
22   hearings – are very similar to those presented in criminal detention cases. The attorneys
23   of the FPDO are skilled at making those legal arguments. What's more, because that
24   legal argument often comes down to factual questions about community housing and
25   treatment referrals, our connections in that area – honed through work with our criminal
26   clients – ensure that our *Franco* clients have their best chance at being released.

27         The second question, deportability, is also a legal point on which the attorneys
28   from the FPDO are particularly well suited to advocate. For nearly all criminally

1   detained immigrants – which represents the vast majority of class members – the

2   question comes down to a categorical analysis: Is x crime an aggravated felony, a crime

3   involving moral turpitude, a controlled substance offense, or the like. As this Court is

4   well aware, this analysis is the bread and butter of federal sentencing and illegal reentry

5   cases, and pressing the boundaries of this analysis on behalf of clients is something the

6   FPDO is uniquely suited to do. And, indeed, in the year that the FPDO has been

7   representing individuals at Adelanto Detention Center, it has taken the lead on briefing

8   several of these questions and sharing that briefing with other providers.

9           The final question is relief from deportation. The attorneys of the FPDOs screen

10  illegal reentry clients for "plausible" relief from deportation, which is to say that they

11  are fluent in the basic concepts of immigration relief. Moreover, VERA staff, contract

12  attorneys who serve in a consulting role, and other service providers have trained and

13  continue to support the FPDO as they master the nuts and bolts of applications for

14  relief. And, while "win-loss" statistics are certainly not determinative, the first two

15  applications that the FPDO has taken to merits hearing both resulted in relief being

16  granted to their clients. *See* Declaration of Brianna Mircheff, at ¶ 4(d), (g).

17          There are other checks on the system to ensure that representation that class

18  members receive is appropriate. VERA conducts monthly calls with the NQRP

19  provider supervisors, including the FPDO, and provides a yearly training to the

20  attorneys who provide services to class members. It also collects data on outcomes, and

21  provides training materials. VERA has the authority to not reoffer a contract to the

22  FPDO, if its attorneys are not meeting its expectations.

23          All of these facts should allay the Court's concern that attorneys are not screened

24  or selected based on their qualifications to represent individuals in immigration court.

25  The presence of the FPDO in the NQRP project brings a level of expertise in criminal

26  law questions that pervade immigration-court representation, especially for this

27  population, and has the side benefit of increasing the caliber of FPDO representation

28  for non-citizen criminal clients, particularly in illegal reentry cases.

Appointment of the FPDO for the eight named individuals is appropriate under the CJA and is a reasonable accommodation for the class members named in this request. We therefore respectfully request that the Court appoint the FPDO as counsel in the above cases.

Respectfully submitted,

DATED: December 23, 2015     By

HILARY POTASHNER
Federal Public Defender

14

**EXHIBIT A**

H.R. REP. 91-1546, H.R. Rep. No. 1546, 91ST Cong., 2ND
Sess. 1970, 1970 U.S.C.C.A.N. 3982, 1970 WL 5700 (Leg.Hist.)
*3982 P.L. 91-447, CRIMINAL CASES-- ADEQUATE DEFENSE
SENATE REPORT (JUDICIARY COMMITTEE) NO. 91-790,
APR. 23, 1970 (TO ACCOMPANY S. 1461)
HOUSE REPORT (JUDICIARY COMMITTEE) NO. 91-1546,
SEPT. 30, 1970 (TO ACCOMPANY S. 1461)
CONG. RECORD VOL. 116 (1970)
DATES OF CONSIDERATION AND PASSAGE
SENATE APRIL 30, OCTOBER 7, 1970
HOUSE OCTOBER 5, 1970
THE HOUSE REPORT IS SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED
MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

HOUSE REPORT NO. 91-1546

SEPT. 30, 1970

THE COMMITTEE ON THE JUDICIARY, TO WHOM WAS REFERRED THE BILL (S. 1461) TO AMEND SECTION 3006A OF TITLE 18, U.S.C. RELATING TO REPRESENTATION OF DEFENDANTS WHO ARE FINANCIALLY UNABLE TO OBTAIN AN ADEQUATE DEFENSE IN CRIMINAL CASES IN THE COURTS OF THE UNITED STATES, HAVING CONSIDERED THE SAME, REPORT FAVORABLY THEREON WITH AMENDMENTS AND RECOMMEND THAT THE BILL DO PASS.

PURPOSE OF THE AMENDMENTS

AMENDMENT NOS. 1 AND 4 RENDER EXPLICIT THE COVERAGE UNDER SECTION 1(A)(1) OF PERSONS CHARGED WITH JUVENILE DELINQUENCY. WITHIN THE DISTRICT OF COLUMBIA, CHILDREN WOULD ALSO BE COVERED BY SECTION 1(A)(4), INSOFAR AS THE DISTRICT OF COLUMBIA COURT REFORM AND CRIMINAL PROCEDURE ACT OF 1970 (PUBLIC LAW 91-358, APPROVED JULY 29, 1970) REQUIRES THE APPOINTMENT OF COUNSEL FOR THEM IN CASES IN WHICH THEY FACE LOSS OF LIBERTY (SEE AMENDMENT NO. 3).

AMENDMENT NO. 2 PROVIDES THAT UNDER SECTION 1(A)(2) PERSONS UNDER ARREST ARE COVERED BY THE ACT WHEN APPOINTMENT OF COUNSEL FOR THEM IS REQUIRED BY LAW.

*3983 AMENDMENT NO. 3 PROVIDES THAT A PERSON FOR WHOM A FEDERAL LAW REQUIRES THE APPOINTMENT OF COUNSEL IS ENTITLED TO HAVE COUNSEL COMPENSATED UNDER SECTION 1(A)(4) IN A CASE IN WHICH HE FACES LOSS OF LIBERTY.

AMENDMENT NO. 5 CUTS BACK THE HOURLY MAXIMUM RATE TO BE PAID APPOINTED COUNSEL FROM $30 FOR TIME REASONABLY EXPENDED TO $30 PER HOUR EXPENDED IN COURT OR BEFORE A MAGISTRATE AND $20 PER HOUR REASONABLY EXPENDED OUT OF COURT. IT ALSO PROVIDES THAT THE JUDICIAL COUNCIL OF THE CIRCUIT MAY FIX ANOTHER HOURLY RATE, NOT TO EXCEED THE MINIMUM HOURLY SCALE ESTABLISHED BY A BAR ASSOCIATION FOR SIMILAR SERVICES RENDERED IN THE DISTRICT.

AMENDMENT NO. 6 PROVIDES THAT IRRESPECTIVE OF ITS GEOGRAPHIC SCOPE A FEDERAL PUBLIC DEFENDER ORGANIZATION SHALL BE SUPERVISED BY A FEDERAL PUBLIC DEFENDER.

AMENDMENT NO. 7 PROVIDES THAT THERE SHALL NOT BE MORE THAN ONE FEDERAL PUBLIC DEFENDER WITHIN A SINGLE JUDICIAL DISTRICT. THIS LIMITATION APPLIES ONLY TO TOP PERSONNEL WHERE COMPENSATION IS FIXED AT A RATE NOT TO EXCEED THE COMPENSATION RECEIVED BY THE U.S. ATTORNEY FOR THE DISTRICT INVOLVED. THE NUMBER OF ATTORNEYS TO BE APPOINTED IS SUBJECT TO AMENDMENT NO. 8.

AMENDMENT NO. 8 PROVIDES THAT THE NUMBER OF FULL-TIME ATTORNEYS TO BE APPOINTED BY A FEDERAL PUBLIC DEFENDER SHALL BE APPROVED BY THE JUDICIAL COUNCIL OF THE CIRCUIT AND THE NUMBER OF OTHER PERSONNEL TO BE APPOINTED BY HIM SHALL BE APPROVED BY THE DIRECTOR OF THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS.

AMENDMENT NO. 9 PROHIBITS A FEDERAL PUBLIC DEFENDER OR ANY ATTORNEY APPOINTED BY HIM FROM ENGAGING IN THE PRIVATE PRACTICE OF LAW.

AMENDMENT NO. 10 CONFORMS THE BUDGETARY REQUIREMENTS OF THE BILL TO EXISTING PRACTICES GOVERNING THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS.

AMENDMENT NO. 11 PROVIDES THAT EXCEPT FOR SUBSECTION (H) INVOLVING DEFENDER ORGANIZATIONS, THE PROVISIONS OF THE CRIMINAL JUSTICE ACT APPLY IN THE DISTRICT OF COLUMBIA. THE DISTRICT ALREADY A PUBLIC DEFENDER SERVICE (TITLE III, PUBLIC LAW 91-358).

AMENDMENT NO. 12 IS TECHNICAL.

AMENDMENT 13 PROVIDES A DELAYED EFFECTIVE DATE, 120 DAYS AFTER ENACTMENT.

## PURPOSE OF THE AMENDED BILL

THE PURPOSE OF S. 1461 AS AMENDED IS TO IMPROVE THE OPERATION OF THE CRIMINAL JUSTICE ACT OF 1964 (SEC. 3006A OF TITLE 18, UNITED STATES CODE) WHICH MADE PROVISION FOR THE COMPENSATION OF COUNSEL APPOINTED TO REPRESENT DEFENDANTS IN CRIMINAL PROCEEDINGS WHO WERE FINANCIALLY UNABLE TO OBTAIN AN ADEQUATE DEFENSE. THIS IS SOUGHT TO BE ACCOMPLISHED (1) BY BROADENING THE SCOPE AND COVERAGE OF THE ACT, (2) BY RENDERING THE MAXIMUM RATES OF COMPENSATION PAYABLE TO APPOINTED COUNSEL MORE REALISTIC IN TERMS OF TODAY'S CONDITIONS, AND (3) BY AUTHORIZING THE ESTABLISHMENT OF PUBLIC DEFENDER ORGANIZATIONS WITH FULL-TIME STAFFS.

## *3984 LEGISLATIVE HISTORY

THE COMMITTEE ADOPTS THAT SECTION OF SENATE REPORT 91-790, TO ACCOMPANY S. 1461, WHICH IS CAPTIONED 'LEGISLATIVE HISTORY' AND WHICH READS AS FOLLOWS:

THE CONGRESS ENACTED THE CRIMINAL JUSTICE ACT OF 1964, PUBLIC LAW 88-455, TO ACHIEVE MORE MEANINGFUL AND EFFECTIVE REPRESENTATION FOR DEFENDANTS IN FEDERAL CRIMINAL CASES. RECOGNIZING THAT DEFENDANTS OFTEN DID NOT HAVE THE RESOURCES TO OBTAIN COUNSEL OR DEFENSE SERVICES, THE ACT PROVIDED COMPENSATION FOR APPOINTED COUNSEL AND PAYMENT FOR NECESSARY EXPERT AND INVESTIGATIVE SERVICES. THIS COMPENSATION WAS INTENDED TO

EASE THE FINANCIAL BURDEN ON THE ATTORNEY, WHO OFFERS HIS SERVICES TO A DEFENDANT AS A PROFESSIONAL PUBLIC DUTY. THE LEVEL OF FEES ESTABLISHED UNDER THE ACT WAS INTENDED TO OFFER SOME BUT NOT FULL COMPENSATION FOR THE APPOINTED ATTORNEY AND TO PROVIDE ADEQUATE DEFENSE SERVICES FOR HIS CLIENT. IN ADDITION, THE ACT DEFINED A DEFENDANT'S ELIGIBILITY FOR APPOINTMENT OF COMPENSATED COUNSEL IN TERMS OF FINANCIAL INABILITY TO OBTAIN ADEQUATE REPRESENTATION RATHER THAN IN TERMS OF INDIGENCY.

THE ACT REQUIRES EACH U.S. DISTRICT COURT, WITH THE APPROVAL OF THE JUDICIAL COUNCIL OF THE CIRCUIT, TO PLACE IN OPERATION A PLAN TO FURNISH REPRESENTATION FOR DEFENDANTS. ALTERNATIVE PLANS ARE ALLOWED, EITHER THROUGH THE PRIVATE BAR, OR THROUGH BAR ASSOCIATIONS OR LEGAL AID AGENCIES, OR A COMBINATION.

THE CRIMINAL JUSTICE ACT WAS FIRST INTRODUCED IN THE SENATE IN 1963 AS S. 1057 BY SENATOR HRUSKA OF NEBRASKA. SENATOR COTTON OF NEW HAMPSHIRE, SENATOR ERVIN OF NORTH CAROLINA, AND THEN-SENATOR KEATING OF NEW YORK WERE COSPONSORS. WHEN THE ACT PASSED CONGRESS IN 1964, IT HAD THE SUPPORT OF BOTH THE PRESIDENT AND A SUBSTANTIAL MAJORITY IN EACH HOUSE OF CONGRESS.

THE ORIGINAL BILL PASSED BY THE SENATE IN 1963 WAS BROADER THAN THE FINAL ACT IN ONE IMPORTANT RESPECT. THE SENATE BILL HAD INCLUDED A PROVISION AUTHORIZING A FEDERAL PUBLIC DEFENDER SYSTEM AS WELL AS A SYSTEM OF COMPENSATION FOR APPOINTED PRIVATE COUNSEL. THE HOUSE REMOVED THE PUBLIC DEFENDER PROVISION, AND THE CONFERENCE COMMITTEE RESOLVED THE DIFFERENCE IN FAVOR OF THE HOUSE POSITION. THE PROVISION WAS DELETED DUE TO DOUBTS RAISED IN THE HOUSE ABOUT THE PROPRIETY OF PLACING THE DEFENSE OF CRIMINAL SUSPECTS IN THE CONTROL OF THE GOVERNMENT SINCE THE GOVERNMENT WAS ALSO RESPONSIBLE FOR PROSECUTIONS. THE CONFERENCE COMMITTEE RECOGNIZED THE DESIRABILITY OF FURTHER STUDY AND RECOMMENDED THAT THE DEPARTMENT OF JUSTICE CONDUCT A REVIEW OF THE NEED OF A FEDERAL PUBLIC DEFENDER SYSTEM AS WELL AS AN EVALUATION OF THE OPERATION OF THE ACT GENERALLY.

TO GIVE EFFECT TO THIS REQUEST OF CONGRESS, THE DEPARTMENT OF JUSTICE, IN 1967, THROUGH ITS OFFICE OF CRIMINAL JUSTICE, AND THE JUDICIAL CONFERENCE OF THE UNITED STATES, THROUGH ITS COMMITTEE TO IMPLEMENT THE CRIMINAL JUSTICE ACT, JOINTLY COMMISSIONED PROF. *3985 DALLIN H. OAKS OF THE UNIVERSITY OF CHICAGO LAW SCHOOL, TO UNDERTAKE A STUDY OF THE OPERATION OF THE CRIMINAL JUSTICE ACT. PROFESSOR OAKS WAS ASKED TO GIVE PARTICULAR ATTENTION TO THE QUESTION OF A FEDERAL PUBLIC DEFENDER SYSTEM.

PROFESSOR OAKS' STUDY WAS CONDUCTED UNDER THE AUSPICES OF THE NATIONAL LEGAL AID AND DEFENDER ASSOCIATION'S NATIONAL DEFENDER PROJECT AND THE UNIVERSITY OF CHICAGO'S CENTER FOR THE STUDIES IN CRIMINAL JUSTICE. A COMPREHENSIVE REPORT WAS ISSUED IN 1968. THE REPORT, ENTITLED 'THE CRIMINAL JUSTICE ACT IN THE FEDERAL DISTRICT COURTS,' WAS PUBLISHED AS A COMMITTEE PRINT BY THE SENATE COMMITTEE ON THE JUDICIARY, AND WAS WIDELY CIRCULATED AMONG FEDERAL JUDGES AND THE LEGAL PROFESSION. THE OAKS REPORT PRAISED THE ADMINISTRATION OF THE ACT BUT TOOK NOTE OF SEVERAL SHORTCOMINGS AND VARIATIONS OF PRACTICE IN THE WORKING OF THE CRIMINAL JUSTICE ACT. IT ALSO POINTED OUT THAT RECENT DEVELOPMENTS IN THE SIXTH AMENDMENT RIGHT TO COUNSEL IN CRIMINAL LAW JUSTIFIED AN EXPANSION OF THE ACT'S COVERAGE. AS A RESULT OF THESE FINDINGS THE JUDICIAL CONFERENCE COMMITTEE TO IMPLEMENT THE CRIMINAL JUSTICE ACT, CHAIRED BY JUDGE JOHN HASTINGS, CHIEF JUDGE OF THE SEVENTH CIRCUIT COURT OF APPEALS, RECOMMENDED A SERIES OF AMENDMENTS. THESE WERE ADOPTED BY THE JUDICIAL CONFERENCE DURING ITS MEETING IN SEPTEMBER 1968.

ON OCTOBER 10, 1968, SENATOR HRUSKA AND SENATOR ERVIN INTRODUCED S. 4182, WHICH EMBODIED THE RECOMMENDATIONS OF THE JUDICIAL CONFERENCE. HOWEVER, IT WAS NOT POSSIBLE FOR THE COMMITTEE TO ACT DURING THE FEW MONTHS LEFT IN THE 90TH CONGRESS.

ON JANUARY 27, 1969, THE BILL WAS REINTRODUCED AS S. 650 IN THE 91ST CONGRESS. S. 650 WAS CIRCULATED AMONG FEDERAL JUDGES, PUBLIC DEFENDER ORGANIZATIONS, AND ATTORNEYS EXPERIENCED WITH THE CRIMINAL JUSTICE ACT. CLOSE CONSIDERATION WAS ALSO GIVEN TO THE RECOMMENDATION IN THE OAKS REPORT:

THAT THERE IS A DEMONSTRATED NEED FOR SOME TYPE OF FULL-TIME SALARIED FEDERAL DEFENDER LAWYERS ON AN OPTIONAL BASIS IN CERTAIN DISTRICTS, ESPECIALLY THE LARGE URBAN DISTRICTS, AND THAT MEASURES SHOULD BE TAKEN TO ESTABLISH THE FEDERAL DEFENDER AS A FINANCIALLY STABLE OPTION UNDER THE CRIMINAL JUSTICE ACT. [1]

ON THE BASIS OF SUGGESTIONS RECEIVED AND FURTHER STUDY, SENATOR HRUSKA, FOR HIMSELF AND SENATORS ERVIN, GOLDWATER, AND KENNEDY INTRODUCED A REVISED BILL (S. 1461) ON MARCH 10, 1969. IN ADDITION TO EMBODYING THE SUBSTANCE OF S. 650, S. 1461 MAKES FURTHER REFINEMENTS IN THE COMPENSATION AND COVERAGE PROVISIONS AND ALLOWS THE CREATION OF FEDERAL PUBLIC DEFENDER AND COMMUNITY DEFENDER ORGANIZATIONS. S. 1461 IS EXPRESSLY TAILORED TO MEET EARLIER OBJECTIONS TO THE CONCEPT OF A FEDERAL PUBLIC DEFENDER SYSTEM BY MAKING ACTIVE AND SUBSTANTIAL PARTICIPATION BY PRIVATE ATTORNEYS BASIC TO ANY DISTRICT PLAN FOR REPRESENTATION. THE USE OF APPOINTED PRIVATE COUNSEL CAN BE SUPPLEMENTED, BUT NOT REPLACED, *3986 IN QUALIFYING DISTRICTS BY EITHER OR BOTH OF TWO FULL-TIME DEFENDER ORGANIZATIONAL: A FEDERAL PUBLIC DEFENDER ORGANIZATION AND A COMMUNITY DEFENDER ORGANIZATION. THIS INSURES A MIXED DEFENDER SYSTEM.

ON JUNE 24, 25, AND 26, 1969, THE CONSTITUTIONAL RIGHTS SUB-COMMITTEE HELD HEARINGS ON S. 1461. AMONG THOSE WHO APPEARED AT THE HEARINGS WERE JUDGE HARVEY M. JOHNSON, SENIOR JUDGE OF THE EIGHTH CIRCUIT COURT OF APPEALS, A KEY MEMBER OF THE U.S. JUDICIAL CONFERENCE COMMITTEE TO IMPLEMENT THE CRIMINAL JUSTICE ACT; THREE OTHER FEDERAL COURT JUDGES WITH BROAD EXPERIENCE UNDER THE ACT; PROF. DALLIN OAKS OF THE UNIVERSITY OF CHICAGO LAW SCHOOL, WHO DIRECTED THE EXTENSIVE STUDY OF THE ACT LAST YEAR FOR THE JUDICIAL CONFERENCE COMMITTEE; ASSOCIATE DEPUTY ATTORNEY GENERAL SANTARELLI; MAYNARD J. TOLL, ON BEHALF OF THE NATIONAL LEGAL AID AND DEFENDER ASSOCIATION; GENERAL CHARLES L. DECKER, DIRECTOR OF THE NATIONAL DEFENDER PROJECT; AND ROBERT J. KUTAK, ON BEHALF ON THE AMERICAN BAR ASSOCIATION. THE SUB-COMMITTEE ALSO HAD THE BENEFIT OF TESTIMONY FROM THE DIRECTORS OF FOUR MAJOR FEDERAL DEFENDER PROGRAMS WHICH HAVE BEEN OPERATING WITH THE ASSISTANCE OF THE NATIONAL LEGAL AIR AND DEFENDER ASSOCIATION AND THE DEPARTMENT OF JUSTICE.

EACH OF THE 18 WITNESSES APPEARING BEFORE THE SUBCOMMITTEE EITHER POSSESSED A BROAD BACKGROUND OF PRACTICAL EXPERIENCE WITH THE ACT OR HAD EXTENSIVELY STUDIED ITS OPERATION SINCE IT TOOK EFFECT ON AUGUST 20, 1965. WHILE UNANIMOUSLY SUPPORTING THE OBJECTIVES OF S. 1461, THEY SUBMITTED MANY SUGGESTIONS FOR REFINING AND PERFECTING THE BILL. THE PROPOSED CHANGES EMBODIES IN S. 1461, AS AMENDED BY THIS COMMITTEE, ARE BASED ON THE SOUND SUGGESTIONS OF THESE KNOWLEDGEABLE WITNESSES, ON AN EXTENSIVE STUDY BY THE SUBCOMMITTEE, THE AMERICAN BAR ASSOCIATION, THE JUDICIAL CONFERENCE, AND ON PROFESSOR OAKS' REPORT.

TO THE FOREGOING RECITAL OF LEGISLATIVE HISTORY OFFERED BY THE OTHER BODY THE FOLLOWING MAY BE ADDED:

S. 1461 AS AMENDED BY THE SENATE JUDICIARY COMMITTEE PASSED THE SENATE ON MAY 1, 1970, AND WAS REFERRED TO THIS COMMITTEE, WHICH ALSO HAD BEFORE IT THREE HOUSE MEASURES (H.R. 9687, 9856, AND 11450) THAT WERE IDENTICAL TO S. 1461, AS INTRODUCED. PUBLIC HEARINGS WERE HELD ON JUNE 18 AND 25, 1970 AT WHICH CONGRESSMEN MCCULLOCH AND POFF WERE HEARD AS WERE GENERAL DECKER, ASSOCIATE DEPUTY ATTORNEY GENERAL SANTARELLI, REPRESENTING THE DEPARTMENT OF JUSTICE, AND JUDGE HASTINGS, REPRESENTING THE JUDICIAL CONFERENCE. HERE, AS IN THE SENATE HEARINGS, THERE WAS SUBSTANTIAL UNANIMITY IN FAVOR OF THE SALIENT FEATURES OF THE LEGISLATION.

## SECTION-BY-SECTION ANALYSIS

### SECTION 1(A).

-- THE CRIMINAL JUSTICE ACT OF 1964 PROVIDES THAT EACH DISTRICT COURT SHALL ADOPT A PLAN FOR FURNISHING REPRESENTATION FOR FINANCIALLY DISABLED PERSONS CHARGED WITH FELONIES OR MISDEMEANORS, OTHER THAN PETTY *3987 OFFENSES, AT EVERY STAGE OF THE PROCEEDINGS FROM INITIAL APPEARANCE THROUGH APPEAL. SECTION 1(A) OF THE AMENDED BILL AMENDS THE ACT IN TWO FUNDAMENTAL WAYS: FIRST, BY EXPANDING COVERAGE; AND SECOND, BY AUTHORIZING REPRESENTATION BY FEDERAL PUBLIC DEFENDER AND COMMUNITY DEFENDER ORGANIZATIONS IN ADDITION TO THE PRESENT ALTERNATIVES OF THE PRIVATE BAR, BAR ASSOCIATIONS AND LEGAL AID AGENCIES.

### EXPANDED COVERAGE

### SECTION 1(A)(1)

REQUIRES THAT EACH PLAN BE EXPANDED TO PROVIDE FOR APPOINTMENT AND COMPENSATION OF COUNSEL FOR DEFENDANTS CHARGED WITH A VIOLATION OF PROBATION. THIS ADDITION RECOGNIZES THE SUPREME COURT DECISION IN MEMPA V. RHAY, 88 S.CT. 254, 389 U.S. 128, 19 L.ED.2ND 336 (1967), WHICH HELD THAT THE SIXTH AMENDMENT RIGHT TO COUNSEL APPLIES IN PROBATION REVOCATION HEARINGS.

### SECTION 1(A)(2)

REQUIRES THAT EACH PLAN PROVIDE FOR APPOINTMENT OF COUNSEL FOR ANY PERSON UNDER ARREST, WHEN SUCH REPRESENTATION IS REQUIRED BY LAW. THIS REQUIREMENT WILL BRING THE ACT INTO CONFORMITY WITH RECENT DECISIONS OF THE SUPREME COURT WHICH REQUIRE COUNSEL FOR ARRESTED PERSONS. MIRANDA V. ARIZONA, 86 S.CT. 1602, 384 U.S. 218, 18 L.ED.2ND 1149 (1967); AND OROZCO V. TEXAS, 89 S.CT. 1095, 394 U.S. 324, 22 L.ED.2ND 311 (1969). SINCE REPRESENTATION NECESSARILY PRECEDES THE STAGE OF FORMAL APPOINTMENT OF COUNSEL, IT IS NOT POSSIBLE TO DETERMINE WHETHER THE COUNSEL WILL BE ELIGIBLE FOR COMPENSATION UNDER THE ACT UNTIL THE ARRESTED PERSON APPEARS BEFORE THE UNITED STATES MAGISTRATE OR COURT. IF THE MAGISTRATE OR COURT FINDS THE PERSON FINANCIALLY UNABLE TO OBTAIN AN ADEQUATE DEFENSE, COMPENSATION WILL BE MADE RETROACTIVE TO COVER TIME EXPENDED BY THE ATTORNEY DURING THE ARREST PERIOD. IF THE PERSON IS FOUND FINANCIALLY ABLE TO OBTAIN AN ADEQUATE DEFENSE, THEN THE COUNSEL IS REQUIRED TO SEEK COMPENSATION FROM HIS CLIENT. IF THE PERSON NEVER APPEARS BEFORE THE

MAGISTRATE, THE ATTORNEY MAY STILL SUBMIT HIS CLAIM TO THE COURT FOR APPROVAL BASED ON THE ARRESTEE'S FINANCIAL CONDITION.

ALTHOUGH THIS PROCEDURE DOES NOT GUARANTEE COMPENSATION FOR THE ATTORNEY WHO REPRESENTS AN ARRESTED PERSON PRIOR TO A FINDING OF FINANCIAL INABILITY TO PAY, THE COMMITTEE FEELS THAT IT IS CONSISTENT WITH THE PURPOSE OF THE ACT. THE ONLY FINANCIAL RISK OF THE ATTORNEY UNDER THIS PROCEDURE IS THE RISK OF NONPAYMENT BY AN INDIVIDUAL WHO HAS RESOURCES. THIS IS NOT AN UNFAIR BURDEN; IT IS A NORMAL PROFESSIONAL RISK NOW.

## SECTION 1(A)(3)

REQUIRES THAT EACH PLAN PROVIDE FOR THE APPOINTMENT OF COUNSEL, PURSUANT TO THE PROVISIONS OF SECTION 1(G), FOR INDIVIDUALS FINANCIALLY UNABLE TO SECURE ADEQUATE REPRESENTATION WHO ARE SUBJECT TO REVOCATION OF PAROLE, WHO ARE MATERIAL WITNESSES IN CUSTODY, OR WHO ARE SEEKING COLLATERAL RELIEF. INASMUCH AS THESE PROCEEDINGS HAVE TRADITIONALLY BEEN REGARDED AS TECHNICALLY CIVIL IN NATURE RATHER THAN CRIMINAL, NO RIGHT TO APPOINTED COUNSEL HAS AS YET BEEN RECOGNIZED UNDER THE SIXTH AMENDMENT. THE DISTINCTION BETWEEN CIVIL AND CRIMINAL MATTERS, HOWEVER, HAS BECOME INCREASINGLY OBSCURE WHERE DEPRIVATION OF PERSONAL LIBERTY IS INVOLVED. SEE IN RE GAULT, 87 S.CT. 1428, 387 U.S. 1, 18 L.ED.2D 527 (1967), AND JOHNSON V. AVERY, 89 S.CT. 747, 393 U.S. 483, 21 L.ED.2D 718 (1969). THE *3955 PROCEEDINGS LISTED IN SUBSECTION 1(A)(3) AND 1(G) ARE INTIMATELY RELATED TO THE CRIMINAL PROCESS. COUNSEL HAS OFTEN BEEN APPOINTED TO REPRESENT PERSONS IN SUCH PROCEEDINGS, BUT COMPENSATION HAS NOT BEEN AVAILABLE UNDER THE 1964 ACT. THE COMMITTEE BELIEVES THAT COMPENSATION SHOULD BE AVAILABLE UNDER THE ACT WHENEVER A JUDGE DETERMINES THAT COUNSEL MUST BE APPOINTED TO SAFEGUARD THE INTEREST OF JUSTICE.

## SECTION 1(A)(4)

EXTENDS COVERAGE OF THE ACT TO INCLUDE THOSE INSTANCES WHERE JUDICIAL DECISIONS MAY REQUIRE THE APPOINTMENT OF COUNSEL, OR WHERE, IN A CASE IN WHICH A PERSON FACES LOSS OF LIBERTY, ANY FEDERAL LAW REQUIRES THE APPOINTMENT OF COUNSEL. THIS PROVISION OBVIATES THE NEED TO AMEND THE ACT EACH TIME THE RIGHT TO COUNSEL MAY BE EXTENDED TO NEW SITUATIONS. IT ALSO ELIMINATES ANY DOUBT AS TO THE APPLICATION OF THE CRIMINAL JUSTICE ACT TO JUVENILE PROCEEDINGS WHERE THE RIGHT TO COUNSEL IS NOW APPLICABLE (IN RE GAULT, SUPRA), AND TO THE NARCOTIC ADDICTS REHABILITATION ACT OF 1966, PUBLIC LAW 89-793, WHICH PROVIDES PATIENTS WITH THE RIGHT TO APPOINTED COUNSEL, IF NECESSARY, IN JUDICIAL PROCEEDINGS UNDER TITLE III (18 U.S.C. 4253). THE COMMITTEE BELIEVES THAT IT IS UNNECESSARY TO CREATE ANOTHER SEPARATE SYSTEM WHEN THE CRIMINAL JUSTICE ACT CAN SERVE THESE PURPOSES WITHOUT DIFFICULTY.

## DEFENDER ORGANIZATIONS

PRESENT PROVISIONS OF THE CRIMINAL JUSTICE ACT ALLOW THE JUDICIAL DISTRICT THREE ALTERNATIVES IN DEVELOPING ITS PLAN FOR FURNISHING REPRESENTATION TO FINANCIALLY DISABLED DEFENDANTS: APPOINTMENT OF PRIVATE ATTORNEY; USE OF ATTORNEYS FURNISHED BY A BAR ASSOCIATION OR LEGAL AID AGENCY; A COMBINATION OF BOTH.

SECTION 1(A) REQUIRES EACH PLAN TO INCLUDE A PROVISION FOR PARTICIPATION BY PRIVATE ATTORNEYS AND PERMITS, IN ADDITION, ATTORNEYS FURNISHED BY A BAR ASSOCIATION OR LEGAL

AID AGENCY, OR ATTORNEYS FURNISHED BY A FEDERAL PUBLIC DEFENDER OR COMMUNITY DEFENDER ORGANIZATION, ESTABLISHED IN ACCORDANCE WITH THE PROVISIONS OF SUBSECTION 1(H), OR BOTH. WHEN EITHER OF THESE ALTERNATIVES IS CHOSEN, PARTICIPATION BY PRIVATE ATTORNEYS IS NONETHELESS MANDATORY 'IN A SUBSTANTIAL PROPORTION OF CASES.' THIS MIXED SYSTEM INSURES THE CONTINUING ACTIVE PARTICIPATION BY THE PRIVATE BAR IN FEDERAL CRIMINAL PROCEEDINGS.


## SECTION 1(A)

DOES NOT ALTER THE PROCEDURE PRESENTLY SET OUT IN THE 1964 ACT FOR ESTABLISHING A PLAN TO FURNISH REPRESENTATION. FORMULATION AND INSTITUTION OF THE PLAN REMAIN THE RESPONSIBILITIES OF THE DISTRICT COURT SUBJECT TO APPROVAL BY THE JUDICIAL COUNCIL OF THE CIRCUIT. THE COUNCIL IS TO ADD PROVISIONS FOR REPRESENTATION AT THE APPELLATE STAGE. THE PLAN MAY BE MODIFIED AT ANY TIME, WITH THE APPROVAL OF, OR AT THE DIRECTION OF, THE JUDICIAL COUNCIL.


## SECTION 1(B)

OUTLINES THE PROCEDURE TO BE FOLLOWED IN APPOINTING COUNSEL FOR A FINANCIALLY DISABLED PERSON QUALIFIED TO RECEIVE APPOINTMENT OF COMPENSATED COUNSEL UNDER THIS ACT. THE PROCEDURE FOR A DEFENDANT COVERED BY SECTION 1(A)(1) BEGINS WITH INITIAL APPEARANCE BEFORE THE U.S. MAGISTRATE OR COURT WHEN HE IS CHARGED WITH A FELONY OR MISDEMEANOR (OTHER THAN A PETTY OFFENSE) OR WITH JUVENILE DELINQUENCY BY THE COMMISSION OF *3989 AN ACT WHICH IF COMMITTED BY AN ADULT, WOULD BE SUCH A FELONY OR MISDEMEANOR, OR WITH VIOLATING PROBATION. WHEN HE IS INFORMED OF HIS RIGHT TO COUNSEL, HE IS ALSO ADVISED THAT COUNSEL WILL BE APPOINTED FOR HIM IF HE IS FINANCIALLY UNABLE TO OBTAIN COUNSEL. THE PROCEDURE FOR PERSONS SEEKING OR SUBJECT TO PROCEEDINGS SPECIFIED IN SECTION 1(A)(3) BEGINS WHEN THE U.S. MAGISTRATE OR THE COURT ADVISES THE INDIVIDUAL THAT THE INTERESTS OF JUSTICE ALLOW HIM TO BE REPRESENTED BY COUNSEL AND THAT COUNSEL MAY BE APPOINTED IF HE IS FINANCIALLY UNABLE TO OBTAIN AN ADEQUATE DEFENSE. THE PROCEDURE FOR PERSONS UNDER ARREST IN SECTION 1(A)(2) SHALL BE PROVIDED BY THE PLAN FOR THAT JURISDICTION.

SECTION 1(B) EXPRESSLY PERMITS THE U.S. MAGISTRATE OR COURT TO MAKE APPOINTMENT RETROACTIVE TO INCLUDE ANY REPRESENTATION FURNISHED PRIOR TO APPOINTMENT. THUS, AN ATTORNEY WHO RENDERS ASSISTANCE AT THE TIME OF ARREST OR AT A LINEUP, OR WHO RENDERS ASSISTANCE UPON BEING HIRED BY A DEFENDANT WHO SUBSEQUENTLY BECOMES FINANCIALLY UNABLE TO PAY HIRED COUNSEL, WOULD, IF APPOINTED, BE ELIGIBLE TO RECEIVE COMPENSATION TO THE EXTENT AUTHORIZED BY THE ACT FOR ALL SERVICES RENDERED. IN THIS WAY, THE DEFENDANT WILL BE BETTER ASSURED OF UNINTERRUPTED REPRESENTATION BY THE SAME ATTORNEY.


## SECTION 1(C)

OUTLINES THE CIRCUMSTANCES SURROUNDING THE INITIAL APPOINTMENT OF COUNSEL, THE DURATION OF SUCH REPRESENTATION, AND THE PROCEDURE INVOLVED IN THE TERMINATION, SUBSTITUTION, AND PARTIAL PAYMENT OF APPOINTED COUNSEL. THE DIFFERENCE BETWEEN SECTION 1(C) OF THE BILL AND THE CORRESPONDING SECTION OF THE PRESENT ACT ARE, WITH ONE EXCEPTION, QUITE MINOR.

AS AMENDED BY S. 1461, THE ACT WOULD NOT ONLY PROVIDE FOR APPOINTED COUNSEL AT EVERY STAGE OF THE TRIAL FROM INITIAL APPEARANCE THROUGH APPEAL, BUT ALSO FOR 'ANCILLARY MATTERS APPROPRIATE TO THE PROCEEDINGS.' THIS PROVISION IS NECESSARY TO INSURE THAT THE RIGHTS OF THE PERSONS ARE FULLY PROTECTED. MANY TIMES REMEDIES TECHNICALLY OUTSIDE THE SCOPE OF THE TRIAL PROPER MAY BE NECESSARY TO INSURE THAT THE RIGHTS OF THE PERSON ARE FULLY PROTECTED. MANY TIMES REMEDIES TECHNICALLY OUTSIDE THE SCOPE OF THE TRIAL PROPER MAY BE NECESSARY, SUCH AS USING A HABEAS CORPUS AD TESTIFICANDUM TO SECURE THE PRESENCE OR TESTIMONY OF WITNESSES, OR FILING AN APPLICATION UNDER 18 U.S.C. 4344 REGARDING COMPENTENCY TO STAND TRIAL. WHILE THE DISTRICT OF COLUMBIA DISTRICT COURT HAS RULED IN FAVOR OF COMPENSATION UNDER THE PRESENT ACT IN U.S. V. BONEY, CRIM. NO 822-65 (D.C.D.C. SEPT. 28, 1966), AND ALTHOUGH THERE IS NO APPARENT RULING TO THE CONTRARY, THE EXPRESS INCLUSION OF 'ANCILLARY MATTERS APPROPRIATE TO THE PROCEEDINGS' WILL INSURE THAT THE ATTORNEY WHO SPENDS TIME AND EFFORT TO PROTECT A RIGHT CONSIDERED VALUABLE IN DEFENDING THE PRINCIPAL CRIMINAL CHARGE CAN BE COMPENSATED UNDER THE ACT.

SECTION 1(D)

ESTABLISHES THE MAXIMUM HOURLY RATES AND MAXIMUM TOTAL PAYMENTS ALLOWED FOR APPOINTED COUNSEL UNDER THE CRIMINAL JUSTICE ACT. IT ALSO PROVIDES FOR WAIVER OF THE MAXIMUM AMOUNTS UNDER CERTAIN CIRCUMSTANCES AND SETS FORTH THE PROCEDURE FOR FILING CLAIMS. FINALLY, IT DEFINES 'NEW CASE' FOR PURPOSES OF COMPENSATION AND ALLOWS APPELLATE PROCEEDINGS WITHOUT PREPAYMENT OF FEES AND COSTS.

SECTION 1(D)(1).

-- THE PRESENT ACT PROVIDES FOR COMPENSATION AT A RATE NOT TO EXCEED $15 PER HAUR FOR TIME SPENT IN COURT AND $10 PER HOUR FOR TIME REASONABLY EXPENDED OUT OF COURT. THE SENATE BILL CHANGED THIS TO $30 *3990 PER HOUR FOR ALL TIME REASONABLY CONSUMED. SECTION 1(D)(1) OF THE AMENDED BILL RESTORES THE DISTINCTION BETWEEN TIME EXPENDED IN AND OUT OF COURT. IT CONTINUES TO FIX THE MAXIMUM HOURLY RATE AT $30 FOR TIME EXPENDED IN COURT OR BEFORE A MAGISTRATE BUT CUTS BACK THE MAXIMUM RATE FOR TIME REASONABLY EXPENDED OUT OF COURT TO $20. THE COMMITTEE BELIEVES THAT A DIFFERENTIAL IS JUSTIFIED. OUT OF COURT HOURS ARE MORE FLEXIBLY SCHEDULED THAN ARE HOURS SPENT IN ATTENDANCE AT OR PARTICIPATION IN TRIALS. ACCORDING TO ESTIMATES OF THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, THIS CHANGE SHOULD SAVE $2 MILLION. THE COMMITTEE REALIZES THAT THESE HOURLY RATES MAY BE WELL BELOW THOSE CHARGED BY PRIVATELY RETAINED COUNSEL, OR MAY, IN FACT, BE ABOVE THE MINIMUM FEE SCHEDULE IN VARIOUS SECTIONS OF THE COUNTRY. A 1970 PUBLICATION OF THE AMERICAN BAR ASSOCIATION, ENTITLED 'MINIMUM FEE SCHEDULES,' INDICATES (IN APP. D) THAT 45 STATES HAVE MINIMUM HOURLY RATES FOR LEGAL OFFICE WORK SET BY BAR ASSOCIATIONS AND THAT IN 20 OF THESE STATES THE MINIMUM IS LESS THAN $20. COMPARABLY, A LIST OF STATES, CITIES AND COUNTIES (APP. C) YIELDS 24 PLACES HAVING MINIMUM RATES FOR LEGAL OFFICE WORK WHICH ARE LESS THAN $20 PER HOUR. THE COMMITTEE AMENDMENT ACCORDINGLY AUTHORIZED JUDICIAL COUNCILS TO ESTABLISH ALTERNATIVE MAXIMUMS NOT TO EXCEED THE MINIMUM HOURLY SCALE ESTABLISHED BY A BAR ASSOCIATION FOR SIMILAR SERVICES RENDERED IN THE DISTRICT. THESE COULD BE SET BY THE JUDICIAL COUNCIL OF THE CIRCUIT WHERE THE $30 AND $20 MAXIMUMS ARE GROSSLY DISPROPORTIONATE. BY THE SAME TOKEN, THE REFERENCE TO MINIMUM RATES SET LOCALLY BY BAR ASSOCIATIONS SHOULD SERVE TO REMIND JUDICIAL COUNCILS THAT, IN SETTING RATES WITHIN THE

$30 AND $20 MAXIMUMS, LOWER LOCAL RATES SET BY BAR ASSOCIATIONS SHOULD BE TAKEN INTO ACCOUNT.

## SECTION 1(D)(2)

OF THE BILL ELIMINATES THE EXISTING PER CASE BASIS FOR PAYMENT OF FEES AND REPLACES IT WITH A MORE FLEXIBLE SYSTEM OF MAXIMUM PAYMENTS FOR EACH ATTORNEY IN EACH CASE. THE ACT PRESENTLY PROVIDES FOR A $500 MAXIMUM PAYMENT IN A CASE IN WHICH ONE OR MORE FELONIES ARE CHARGED AND $300 IN A CASE IN WHICH ONE OR MORE MISDEMEANORS ARE CHARGED. THE MAXIMUM APPLIES TO EACH CASE IRRESPECTIVE OF THE NUMBER OF ATTORNEYS APPOINTED BY THE COURT. IN PRACTICE, THAT REQUIREMENT HAS BROUGHT HARSH RESULTS WHERE MORE THAN ONE ATTORNEY WAS APPOINTED IN A DIFFICULT CASE AND THE MAXIMUM CASE PAYMENT HAD TO BE FRAGMENTED. SECTION 1(D)(2) INCREASES THE LIMIT TO $1,000 FOR EACH ATTORNEY IN A CASE INVOLVING ONE OR MORE ALLEGED FELONIES AND $400 FOR EACH ATTORNEY IN A CASE IN WHICH ONE OR MORE MISDEMEANORS ARE CHARGED.

IN RECOGNITION OF THE FREQUENTLY COMPLEX NATURE OF APPELLATE LITIGATION, SECTION 1(D)(2) ALSO ESTABLISHES A $1,000 MAXIMUM FOR EACH ATTORNEY IN EACH COURT FOR CASES ON APPEAL. IT ALSO PROVIDES A $250 MAXIMUM FOR EACH ATTORNEY IN EACH PROCEEDING IN EACH COURT IN PROBATION REVOCATION PROCEEDINGS AND MATTERS COVERED BY SUBSECTION (G), SUCH AS PAROLE REVOCATION AND COLLATERAL RELIEF PROCEEDINGS.

## SECTION 1(D)(3)

PROVIDES FOR WAIVER OF MAXIMUM AMOUNTS AND PAYMENT IN EXCESS OF THOSE AMOUNTS FOR EXTENDED OR COMPLEX REPRESENTATION WHEN NECESSARY TO PROVIDE FAIR COMPENSATION AND UPON APPROVAL OF THE CHIEF JUDGE OF THE CIRCUIT. THIS CHANGE FROM THE 1964 ACT IS BASED ON **3991** THE FINDING OF THE OAKS' REPORT THAT THE ORIGINAL LANGUAGE HAS BEEN GIVEN TOO RESTRICTED AN INTERPRETATION.

## SECTION 1(D)(4)

PROVIDES THAT SEPARATE CLAIMS FOR COMPENSATION AND REIMBURSEMENT, EACH SUPPORTED BY SPECIFIC WRITTEN STATEMENTS, SHALL BE SUBMITTED TO THE APPROPRIATE COURT. WHERE REPRESENTATION IS FURNISHED SOLELY BEFORE A U.S. MAGISTRATE, HE FIXES COMPENSATION AND REIMBURSEMENT. WHEN REPRESENTATION IS FURNISHED BEFORE AN APPELLATE COURT, THAT APPELLATE COURT FIXES THEM. IN ALL OTHER INSTANCES, CLAIMS ARE MADE TO THE DISTRICT COURT, AND COMPENSATION AND REIMBURSEMENT ARE DETERMINED BY THAT COURT.

## SECTION 1(D)(5)

DEFINE THE TERM 'NEW CASE' FOR PURPOSES OF COMPENSATION. A COURT ORDER GRANTING A NEW TRIAL IS DEEMED TO INITIATE A NEW CASE, AND ALL THE PAYMENT PROVISIONS OF THE BILL, WOULD, THEREFORE, APPLY ANEW UPON ISSUANCE OF SUCH AN ORDER. OBVIOUSLY, SUCCEEDING ORDERS FOR A NEW TRIAL ALSO ARE 'NEW CASES' FOR THE PURPOSE OF THE ACT.

### SECTION 1(D)(6)

FACILITATES APPELLATE PROCEEDINGS BY ALLOWING A DEFENDANT FOR WHOM COUNSEL IS APPOINTED TO APPEAL OR PETITION FOR A WRIT OF CERTIORARI WITHOUT PREPAYMENT OF FEES AND COST OF SECURITY THEREFOR AND WITHOUT FILING THE AFFIDAVIT REQUIRED BY SECTION 28 U.S.C. 1915(A).

### SECTION 1(E).

-- THE PROVISIONS OF SECTION 1(E) ARE SIMILAR TO THOSE OF THE PRESENT ACT.

### SECTION 1(E)(1)

PROVIDES THAT FUNDS BE MADE AVAILABLE FOR INVESTIGATIVE, EXPERT, OR OTHER SERVICES NECESSARY FOR AN ADEQUATE DEFENSE UPON REQUEST IN ADVANCE IN AN EX PARTE APPLICATION. THERE MUST BE A FINDING THAT THE SERVICES ARE NECESSARY FOR AN ADEQUATE DEFENSE AND THAT THE DEFENDANT IS FINANCIALLY UNABLE TO SECURE THEM.

### SECTION 1(E)(3)

MAINTAINS THE EXISTING LIMIT ON PAYMENT FOR SUCH SERVICES TO A PERSON OR AN ORGANIZATION TO A $300 MAXIMUM BUT INCLUDES A NEW PROVISION FOR WAIVER OF THAT MAXIMUM IF THE COURT CERTIFIES THAT PAYMENT IN EXCESS OF THAT LIMIT IS NECESSARY TO PROVIDE FAIR COMPENSATION BECAUSE OF THE UNUSUAL CHARACTER OR DURATION OF THE SERVICES. THE AMOUNT OF ANY EXCESS PAYMENT MUST BE APPROVED BY THE CHIEF JUDGE OF THE CIRCUIT.

### SECTION 1(F)

OF THE BILL MAKES NO SIGNIFICANT CHANGES FROM THE 1964 ACT. THIS SECTION PROVIDES THAT WHENEVER THE U.S. MAGISTRATE OR THE COURT FINDS THAT FUNDS ARE AVAILABLE FROM OR ON BEHALF OF A PERSON FOR WHOM COUNSEL HAS BEEN APPOINTED, IT MAY AUTHORIZE OR DIRECT THE PAYMENT OF SUCH FUNDS TO THE APPROPRIATE PERSON OR ORGANIZATION, OR TO THE TREASURY. RECOVERIES FROM CLIENTS OF THE FEDERAL DEFENDER OFFICES WOULD, OF COURSE, GO TO THE TREASURY.

### *3992 SECTION 1(G)

SIGNIFICANTLY EXPANDS THE COVERAGE OF THE 1964 ACT BY AUTHORIZING THE U.S. MAGISTRATE OR THE COURT, AS APPROPRIATE, TO APPOINT COUNSEL IN SPECIFICALLY DESIGNATED PROCEEDINGS, PROVIDED THE INTERESTS OF JUSTICE SO REQUIRE AND THE PERSON INVOLVED IS FINANCIALLY UNABLE TO OBTAIN REPRESENTATION. COMPENSATION FOR REPRESENTATION AND PAYMENT FOR SERVICES OTHER THAN COUNSEL MAY BE MADE IN ACCORDANCE WITH SUBSECTIONS (D) AND (E) OF SECTION 1 OF THE BILL.

THE FIRST OF THE NEW DISCRETIONARY APPOINTMENT PROVISIONS OF SUBSECTION (G) ALLOWS APPOINTMENT OF COUNSEL FOR A PERSON SUBJECT TO REVOCATION OF PAROLE. WHILE THERE IS NO PRESENT CONSTITUTIONAL OR STATUTORY RIGHT TO APPOINTED COUNSEL IN SUCH PROCEEDINGS,

THE RESULT OF PAROLE REVOCATION IS THE ABRUPT LOSS OF PERSONAL LIBERTY. ALLOWING APPOINTMENT OF COUNSEL IN A PROCEEDING WITH SUCH A SERIOUS POTENTIAL CONSEQUENCE IS WHOLLY CONSISTENT WITH THE UNDERLYING PHILOSOPHY OF THE CRIMINAL JUSTICE ACT TO ASSURE REPRESENTATION FOR THOSE THREATENED WITH DEPRIVATION OF PERSONAL LIBERTY WHO ARE FINANCIALLY UNABLE TO OBTAIN COUNSEL. A PAROLE REVOCATION PROCEEDING HAS TRADITIONALLY BEEN CONSIDERED A CIVIL, ADMINISTRATIVE MATTER RATHER THAN A CRIMINAL, JUDICIAL MATTER. PROBATION REVOCATION PROCEEDINGS WERE ONCE ALSO DEEMED CIVIL, BUT THE RIGHT TO COUNSEL IN PROBATION REVOCATION PROCEEDINGS HAS RECENTLY BEEN RECOGNIZED BY THE U.S. SUPREME COURT IN MEMPA V. RHAY, 88 S.CT. 254, 389 U.S.128, 19L.ED.2D336 (1967). THE COURT CONSIDERED THE CONSEQUENCES TO THE INDIVIDUAL MORE SIGNIFICANT THAN THE CHARACTERIZATION OF THE PROCEEDINGS.

THE MEMPA CASE SUGGESTS A SIMILAR RESULT WITH RESPECT TO PAROLE REVOCATION PROCEEDINGS, WHICH HAVE THE SAME POSSIBLE CONSEQUENCES OF LOSS OF LIBERTY. INDEED, THE 10TH CIRCUIT, COURT OF APPEALS IN EARNEST V. WILLINGHAM 406F.2D 681(10TH CIRCUIT, 1969) HAS ALREADY MOVED IN THIS DIRECTION. FOR THESE REASONS, SUBSECTION (G) PERMITS APPOINTMENT OF COUNSEL IN PAROLE REVOCATION PROCEEDINGS WHERE, IN THE COURT'S JUDGMENT, THE INTERESTS OF JUSTICE REQUIRE SUCH APPOINTMENT.

SECTION 1(G) ALSO AUTHORIZES THE DISCRETIONARY APPOINTMENT OF AN ATTORNEY FOR A MATERIAL WITNESS IN CUSTODY WHO IS FINANCIALLY UNABLE TO OBTAIN COUNSEL. IN ORDER TO TAKE ADVANTAGE OF THE REVIEW PROCEDURES GIVEN MATERIAL WITNESSES UNDER PROVISIONS OF THE BAIL REFORM ACT OR TO PROTECT HIMSELF IN CONNECTION WITH THE TAKING OF A DEPOSITION, THE MATERIAL WITNESS MAY REQUIRE THE ASSISTANCE OF COUNSEL. THE CONSEQUENCES OF INCARCERATION OF ONE NOT CHARGED WITH A CRIMINAL OFFENSE CALL FOR THIS DISCRETIONARY APPOINTMENT PROVISION WHEN AN INDIVIDUAL IS FINANCIALLY UNABLE TO OBTAIN REPRESENTATION AND THE JUDGE HAS DETERMINED THAT COUNSEL IS NECESSARY.

FINALLY, SECTION 1(G) PROVIDES FOR COMPENSATION OF COUNSEL APPOINTED FOR PERSONS SEEKING COLLATERAL RELIEF UNDER SECTIONS 2241, 2254, OR 2255 OF TITLE 28, OR SECTION 4245 OF TITLE 18, WHERE THE INTERESTS OF JUSTICE SO REQUIRE AND THE PERSON IS FINANCIALLY UNABLE TO OBTAIN REPRESENTATION. SECTION 2241 OF TITLE 28 PROVIDES FOR HABEAS CORPUS FOR FEDERAL PRISONERS CONVICTED IN FEDERAL COURTS AND SECTION 2254 PROVIDES FOR HABEAS CORPUS FOR STATE PRISONERS CONVICTED IN STATE COURTS. MOTIONS TO VACATE FEDERAL SENTENCES ARE ALLOWED UNDER SECTION 2255 OF THAT TITLE AND SECTION 4245 OF TITLE 18 PROVIDES FOR A POST-CONVICTION HEARING WHEN THERE IS PROBABLE CAUSE TO BELIEVE A PERSON WAS MENTALLY INCOMPETENT AT THE TIME OF TRIAL AND THE ISSUE WAS *3993 NOT RAISED DURING THE TRIAL; 18U.S.C.4244, WHICH PROVIDES FOR AN ANCILLARY NOTION ON THE ISSUE OF COMPETENCY TO STAND TRIAL, IS NOT SPECIFICALLY MENTIONED IN THIS SUBSECTION BECAUSE IT WOULD BE COVERED UNDER SECTION 1(C) AS AN 'ANCILLARY MATTER RELATED TO THE (TRIAL) PROCEEDING.'

ALTHOUGH THERE IS CURRENTLY NO CONSTITUTIONAL OR STATUTORY RIGHT TO ASSIGNED COUNSEL IN ANY OF THESE PROCEEDINGS, EACH FREQUENTLY RAISES SERIOUS AND COMPLEX ISSUES OF LAW AND FACT. WHERE, IN THE JUDGMENT OF THE COURT, COUNSEL IS NECESSARY TO INSURE A FAIR HEARING AND WHERE A PERSON IS FINANCIALLY UNABLE TO SECURE ADEQUATE REPRESENTATION, CLEARLY COUNSEL SHOULD BE, AND GENERALLY NOW IS, APPOINTED. IN CIRCUMSTANCES WHERE THE COURT DEEMS IT ESSENTIAL TO APPOINT COUNSEL, THE ATTORNEY SHOULD BE ENTITLED TO COMPENSATION AND THE BENEFIT OF OTHER RESOURCES PROVIDED BY THE CRIMINAL JUSTICE ACT.

### SECTION 1(H)(1)

SETS FORTH QUALIFICATIONS AND CONDITIONS FOR ESTABLISHING FEDERAL DEFENDER AND COMMUNITY DEFENDER ORGANIZATIONS. IT PROVIDES THAT ANY DISTRICT OR PART OF A DISTRICT, OR TWO ADJACENT DISTRICTS OR PARTS OF DISTRICTS, WHETHER OR NOT IN THE SAME CIRCUIT, IN WHICH AT LEAST 200 APPOINTMENTS ARE REQUIRED ANNUALLY MAY ESTABLISH EITHER OR BOTH OF THE AUTHORIZED DEFENDER ORGANIZATIONS. WHERE MORE THAN ONE JUDICIAL CIRCUIT IS INVOLVED IN A PLAN USING A DEFENDER ORGANIZATION, EACH JUDICIAL CIRCUIT COUNCIL MUST APPROVE THE PLAN FOR IT TO BE VALID.

### SECTION 1(H)(2)(A)

AUTHORIZES THE CREATION OF A FEDERAL PUBLIC DEFENDER ORGANIZATION WHICH CONSISTS OF REGULAR SALARIED ATTORNEYS IN THE EMPLOY OF THE UNITED STATES. REGARDLESS OF ITS GEOGRAPHIC SCOPE A PUBLIC DEFENDER ORGANIZATION WOULD OPERATE UNDER THE SUPERVISION OF A FEDERAL PUBLIC DEFENDER APPOINTED BY THE JUDICIAL COUNCIL OF THE CIRCUIT AFTER RECOMMENDATIONS FROM THE DISTRICT COURT OR COURTS TO BE SERVED. HE COULD THEN APPOINT OTHER FULL-TIME ATTORNEYS AND PERSONNEL TO ASSIST HIM IN THE OPERATION OF THE ORGANIZATION. THE NUMBER OF FULL-TIME ATTORNEYS TO BE APPOINTED IS TO BE APPROVED BY THE JUDICIAL COUNCIL OF THE CIRCUIT AND THE NUMBER OF OTHER PERSONNEL IS TO BE APPROVED BY THE DIRECTOR OF THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS. THE FEDERAL PUBLIC DEFENDER WOULD BE APPOINTED FOR A TERM OF 4 YEARS, AND COULD BE REMOVED ONLY FOR INCOMPETENCY, MISCONDUCT IN OFFICE, OR NEGLECT OF DUTY.

COMPENSATION FOR THE FEDERAL PUBLIC DEFENDER WOULD BE FIXED BY THE JUDICIAL COUNCIL OF THE CIRCUIT BUT COULD NOT EXCEED THAT OF THE U.S. ATTORNEY IN THE DISTRICT IN QUESTION. THERE MAY NOT BE MORE THAN ONE FEDERAL PUBLIC DEFENDER WITHIN A SINGLE JUDICIAL DISTRICT. OTHER FULL-TIME ATTORNEYS AND PERSONNEL APPOINTED BY THE FEDERAL PUBLIC DEFENDER WOULD BE PAID ON THE BASIS OF THE COMPENSATION OF FULL-TIME ATTORNEYS AND OTHER PERSONNEL SIMILARLY QUALIFIED IN THE OFFICE OF THE U.S. ATTORNEY. SUCH FULL-TIME ATTORNEYS AND THE PUBLIC DEFENDER WOULD, OF COURSE, BE PROHIBITED FROM ENGAGING IN THE PRIVATE PRACTICE OF LAW DURING THEIR TENURE IN THE FEDERAL PUBLIC DEFENDER OFFICE.

REPORTS ON ACTIVITIES AND FINANCIAL POSITION AND A PROPOSED BUDGET OF EACH ORGANIZATION ARE TO BE MADE TO THE DIRECTOR OF THE ADMINISTRATIVE OFFICE OF THE U.S. COURTS AT THE TIME AND IN THE FORM PRESCRIBED BY HIM. AN ANNUAL BUDGET FOR EACH ORGANIZATION SHALL BE SUBMITTED BY THE DIRECTOR, AND THE DIRECTOR SHALL MAKE PAYMENTS TO AND ON BEHALF OF EACH ORGANIZATION *3994 OUT OF APPROPRIATIONS RECEIVED. PAYMENTS UNDER THIS SECTION ARE MADE IN LIEU OF PAYMENTS UNDER SECTION 1(D) OR (E).

### SECTION 1(H)(2)(B)

AUTHORIZES THE SECOND TYPE OF DEFENDER PROGRAM, THE COMMUNITY DEFENDER ORGANIZATION. THIS IS DEFINED AS A NONPROFIT DEFENSE COUNSEL SERVICE ESTABLISHED AND ADMINISTERED BY ANY ORGANIZATION AUTHORIZED BY THE PLAN TO PROVIDE REPRESENTATION. ITS BYLAWS MUST BE SET FORTH IN THE PLAN, AND THE ORGANIZATION MUST MAKE ANNUAL REPORTS ON FINANCIAL STATUS, ACTIVITIES, ANTICIPATED, CASELOAD, AND EXPENSES TO THE JUDICIAL CONFERENCE OF THE UNITED STATES. WITH THE APPROVAL OF THE JUDICIAL CONFERENCE, SUCH AN ORGANIZATION WOULD BE

ELIGIBLE TO RECEIVE AN INITIAL GRANT TO COVER ORGANIZATIONAL EXPENSES. THEREAFTER, THE ORGANIZATION WOULD FUNCTION ON THE BASIS OF THE HOURLY RATES AND MAXIMUM PAYMENTS SET FORTH IN SUBSECTIONS (D) AND (E) OF SECTION 1 OR, IN LIEU OF THOSE PAYMENTS, IT COULD, TO THE EXTENT APPROVED BY THE JUDICIAL CONFERENCE, RECEIVE PERIODIC SUSTAINING GRANTS TO COVER THE COSTS OF PROVIDING REPRESENTATION AND OTHER EXPENSES.

NEW SUBSECTION (L) OF SECTION 1 PROVIDES THAT THE PROVISIONS OF THIS ACT SHALL, EXCEPT FOR SUBSECTION (H) OF SECTION 1, BE APPLICABLE IN THE DISTRICT OF COLUMBIA AND THAT THE PLAN OF THE DISTRICT OF COLUMBIA SHALL BE APPROVED JOINTLY BY THE JUDICIAL COUNCIL OF THE DISTRICT OF COLUMBIA CIRCUIT AND THE DISTRICT OF COLUMBIA COURT OF APPEALS.

### SECTION 2

IS A TECHNICAL AMENDMENT WHICH IS NECESSARY BECAUSE THE FEDERAL MAGISTRATES ACT OF 1968 HAS NOT YET TAKEN EFFECT IN ALL DISTRICTS. THIS AMENDMENT MAKES IT PLAIN THAT S. 1461 DOES NOT CONFER ANY OF THE NEW POWERS OF A U.S. MAGISTRATE ON A U.S. COMMISSIONER UNTIL THE FEDERAL MAGISTRATES ACT TAKES EFFECT IN THE PARTICULAR JUDICIAL DISTRICT.

PRESENT COSTS OF THE CRIMINAL JUSTICE ACT OF 1964 HAVE BEEN IN THE NEIGHBORHOOD OF $3 MILLION PER YEAR. AT THE HEARING, THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS ESTIMATED THAT UNDER THE BILL AS AMENDED THIS FIGURE WOULD APPROXIMATE $14 MILLION. THIS ESTIMATE, HOWEVER, INCLUDED AN ITEM OF 200,000 HOURS OF OUT-OF-COURT SERVICES TO BE COMPENSATED AT $30 PER HOUR, AS THE BILL THEN STOOD. IF THE COMMITTEE'S PROPOSED MAXIMUM OF $20 PER HOUR FOR OUT-OF-COURT HOURS IS SUBSTITUTES, $2 MILLION WOULD BE SAVED. (SEE HEARINGS, PP. 94 AND 95.)

### SUMMARY OF CONCLUSIONS

ALL WITNESSES BEFORE THE OTHER BODY AND BEFORE THIS COMMITTEE WERE ENTHUSIASTIC IN THEIR APPROVAL OF THE CRIMINAL JUSTICE ACT AND IN THEIR BELIEF THAT ITS SCOPE SHOULD BE EXPANDED, ITS MAXIMUM FEES INCREASED, AND A FULLTIME DEFENDER SYSTEM BE MADE AVAILABLE IN CROWDED DISTRICTS. PAGES 12 THROUGH 20 OF SENATE REPORT NO. 91-790 CONTAIN EXTRACTS FROM THE TESTIMONY OF A WIDE RANGE OF EXPERTS SUPPORTING THE MEASURE IN ITS MAIN PROVISIONS. SIMILAR STATEMENTS WERE MADE AT HEARINGS BEFORE THE HOUSE SUBCOMMITTED. THE COMMITTEE FAVORS THE LEGISLATION AS HEREIN AMENDED AND RECOMMENDS ITS ENACTMENT.

1 OAKS, DALLIN H., 'THE CRIMINAL JUSTICE ACT IN THE FEDERAL DISTRICT COURTS.' (1969), P. 11.

(Note: 1. PORTIONS OF THE SENATE, HOUSE AND CONFERENCE REPORTS, WHICH ARE DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY TO THE INTERPRETATION OF THE LAWS, ARE OMITTED. OMITTED MATERIAL IS INDICATED BY FIVE ASTERISKS: *****. 2. TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOPIC FIELD SEARCH USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))

H.R. REP. 91-1546, H.R. Rep. No. 1546, 91ST Cong., 2ND Sess. 1970, 1970 U.S.C.C.A.N. 3982, 1970 WL 5700 (Leg.Hist.)

End of Document     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

1

## **PROOF OF SERVICE**

2

3   I, the undersigned, declare that I am a resident or employed in Los Angeles County,

4   California; that my business address is the Office of the Federal Public Defender, 321

5   East 2nd Street, Los Angeles, California 90012-4202; that I am over the age of eighteen

6   years; that I am not a party to the above-entitled action; that I am employed by the

7   Federal Public Defender for the Central District of California, who is a member of the

8   Bar of the United States District Court for the Central District of California, and at

9   whose direction I served: **Ex Parte Application for Appointment of Counsel;**

10  **Exhibit with (Proposed) Order; Ex Parte Application to File Under Seal; with**

11  **(Proposed) Order; Declaration of Brianna Fuller Mircheff [Filed Under Seal];**

12  **Notice of Related Cases.**

13          On December 23, 2015, following ordinary business practice, service was placed

14  in a sealed envelope for collection and mailing via United States Mail, to lead counsel

15  in the related case of *Franco-Gonzalez v. Holder*, addressed as follows:

16          Ahilan T Arulanantham
17          ACLU Foundation of Southern California
            1313 West Eighth Street
18          Los Angeles, CA 90017

19
            August E Flentje
20          United States Department of Justice
            Civil Division
21          950 Pennsylvania Avenue NW
22          Washington, DC 20530-0009

23
            Jeffrey S Robins
24          Department of Justice
            Office of Immigration Litigation - District Court Section
25          PO Box 868 Ben Franklin Station
26          Washington, DC 20044

27
            This proof of service is executed at Los Angeles, California, on December 23,

28

1

1   2015. I declare under penalty of perjury that the foregoing is true and correct to the best

2   of my knowledge.

3

4   Dated: December 23, 2015          By: _____
                                           Rosalinda Lozano

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28